

**SIGNED this 5 day of October, 2020.**

_James P. Smith_
**James P. Smith**
**Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 7 |
| | : | |
| JOSEPH M. WILLMAN, JR., | : | Case No. 20-50365-JPS |
| JAMIE B. O'HARA, | : | |
|     Debtors | : | |
| | : | |
| KELLY TOWNSEND, | : | |
|     Plaintiff | : | |
| vs. | : | Adversary Proceeding |
| | : | No. 20-5013-JPS |
| JOSEPH M. WILLMAN, JR., | : | |
| JAMIE B. O'HARA, | : | |
|     Defendants | : | |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

    For Debtors/Defendants:    Wesley J. Boyer
        Boyer Terry LLC
        348 Cotton Avenue
        Ste 200
        Macon, GA 31201

    For Plaintiff:    W. Steven Harrell
        Steven Harrell, Attorney at Law
        P.O. Box 1343
        Perry, GA 31069

**MEMORANDUM OPINION**

In this adversary proceeding, Plaintiff is the assignee of a judgment entered by the Court of Common Pleas Probate Division, Columbiana County, Ohio (the "Probate Court") against Debtors. Plaintiff timely filed this adversary proceeding against Debtors asking that the judgment be declared nondischargeable under 11 U.S.C. § 523(a)(4) and (a)(6).[1] Plaintiff has filed a motion for summary judgment (Docket No. 15), supported by her legal brief, affidavit and copies of judgments and other filings from the Probate Court and the Twiggs County, Georgia Superior Court (where the judgment was domesticated). Debtors have responded by filing their own brief and affidavits.

Having reviewed the pleadings, briefs, affidavits, exhibits and the law, the Court will now publish its decision. For the reasons stated below, Plaintiff's motion for summary judgment is denied in part and granted in part.

FACTS

For the most part, the facts are not in dispute. Any alleged factual disputes have been resolved by the Probate Court.

Plaintiff and Debtor Jamie B. O'Hara are sisters. Their father, John C. O'Hara, was diagnosed with cancer in 2012. Thereafter, he moved from Ohio to Georgia to live with Debtors. Debtors helped the father move his belongings to Georgia, including, and as desired by the

---

[1] An assignee of a nondischargeable claim may assert a claim under 11 U.S.C. § 523(a). Florida v. Ticor Title Ins. Co. of Cal. (In re Florida), 164 B.R. 636, 640 (B.A.P. 9th Cir. 1994); In re Bryer, 227 B.R. 201, 204 (Bankr. D. Me. 1998).

father, an extensive gun collection. Gradually, the father's mental and physical condition deteriorated. At some point, Plaintiff came to Georgia and took the father back to Ohio. However, the gun collection was not moved and remained at Debtors' home. The father died in Ohio on February 5, 2013.

Plaintiff filed the father's will in the Probate Court and, pursuant to the terms of the will, was appointed executrix of the Estate of John C. O'Hara. She also filed a Complaint for Concealment of Assets against Debtors, alleging that the guns were property of the Estate and were wrongfully appropriated by Debtors.

A hearing was held in the Probate Court on July 25, 2013, at which Plaintiff and her counsel and Debtors and their counsel attended. Debtors' counsel stipulated, and Ms. O'Hara acknowledged, that she was in possession of the subject guns, which numbered at least 100. The Probate Court entered an order prohibiting Debtors from disposing of the guns and ordered Debtors to make them available to the Estate to be photographed, appraised, inspected and inventoried.

Thereafter, Plaintiff filed a Motion to Return Assets in the Probate Court, alleging that Debtors had refused to cooperate in making the guns available for inspection and appraisal. On November 6, 2013, and again on November 14, 2013, the Probate Court entered orders requiring Debtors to return the guns to the state of Ohio and to the Estate.

On January 9, 2014, Plaintiff and her counsel and Debtors and their counsel again appeared in the Probate Court. At this hearing, Debtors testified that they had not returned the guns as previously ordered by the Court. They also admitted to having only 17 guns, which was in conflict with the stipulation made at the July 25, 2013 hearing that they had at least 100 guns.

The Probate Court found Debtors in contempt for failure to comply with its previous orders and sentenced each Debtor to 30 days in jail plus a fine of $250 each. The Court ordered Debtors to each immediately serve 2 days in jail and then gave them the opportunity to purge themselves of the remaining 28 days by complying with the Court's November 14, 2013 turnover order within 90 days.

On March 14, 2014, the Probate Court held a hearing on the merits of the Complaint for Concealment of Assets. Plaintiff and her counsel attended. Debtors also attended, but this time pro se, their counsel having previously filed a motion to withdraw. After hearing evidence, the Court gave the parties an opportunity to submit proposed findings of fact and conclusions of law. Plaintiff filed proposed findings and conclusions, but Debtors did not.

On April 23, 2014, the Court entered its judgment on the Complaint. It found that Debtors had failed to comply with its prior turnover orders or purge themselves of the Court's prior contempt order. Accordingly, the Court ordered Debtors to serve 14 days in jail.

The Court also "found the [Debtors] continue to withhold, conceal and secret (sic) assets rightfully belonging to the Estate of John C. O'Hara." (Plaintiff's Exhibit 4, p. 3, ¶ 18). The Court further found that, at the time of his death, Mr. O'Hara owned 133 Smith & Wesson Revolvers having a value of $80,646 and 68 additional guns of various makes having a value of $68,275. The Court found that Debtors had returned some of these guns, specifically Smith & Wesson guns having a value of $8,970 and non-Smith & Wesson guns having a value of $7,120. The Court found that other guns returned by Debtors were not from Mr. O'Hara's collection. The Court granted the Estate judgment against Debtors for "$68,099, representing the net value of Smith & Wesson guns concealed by [Debtors]" and "$57,841...representing the net value of

non-Smith & Wesson guns concealed by [Debtors]". (Plaintiff's Exhibit 4, p. 7, ¶ 20). Debtors did not appeal this judgment.

On July 29, 2019, the Superior Court of Twiggs County, Georgia entered an order domesticating the judgment in Georgia pursuant to the Uniform Enforcement of Foreign Judgments Act, O.C.G.A. § 9-12-130.

On November 19, 2014, the Probate Court entered an order which provided:

> After a review of this matter, it is hereby the Order of the Court that the Executrix, Kelly Townsend, shall assign the Judgment awarded to the Estate of John C. O'Hara against [Debtors] in the amount of $125,940 to Kelly Townsend individually as a distribution to her from the Estate, subject to all of the rights of the Estate to pursue collection of the Judgment against the [Debtors]. This distribution is in accordance with the Decedent's Last Will and Testament.
>
> Therefore, the Court hereby approves the Assignment of the Judgment to Ms. Townsend individually as a distribution made in accordance with the Decedent's Last Will and Testament in the amount of $125,940 against [Debtors].

(Plaintiff's Exhibit 5). Pursuant to that order, the judgment against Debtors was assigned to Plaintiff, individually, pursuant to an Assignment dated November 29, 2014. (Plaintiff's Exhibit 6).

Debtors filed for Chapter 7 relief in this Court on February 24, 2020.

## LEGAL DISCUSSION

Plaintiff contends that her judgment is nondischargeable under 11 U.S.C. § 523(a)(4) and (6). Those Code provisions provide:

6

> A discharge under section 727...of this title does not discharge an individual debtor from any debt-...
>> (4) for...larceny; ...
>> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity...

Plaintiff has the burden of proof by a preponderance of the evidence that the claim is non-dischargeable. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Plaintiff also contends that the doctrine of collateral estoppel precludes Debtors from denying the nondischargeable nature of the judgment. The Eleventh Circuit Court of Appeals has held:

> Collateral estoppel, or issue preclusion, bars relitigation of an issue previously decided in judicial or administrative proceedings if the party against whom the prior decision is asserted had a "full and fair opportunity" to litigate that issue in an earlier case. Allen McCurry, 449 U.S. 90, 95, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Collateral estoppel principles apply to dischargeability proceedings. Grogan v. Garner, 498 U.S. 279, 285 n.11, 111 S.Ct. 654, 658 n.11, 112 L.Ed.2d 755 (1991). If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect. In re Touchstone, 149 B.R. 721, 725 (Bankr. S.D. Fla. 1993).

St. Laurent v. Ambrose (In re St. Laurent), 991 F.2d 672, 675-76 (11th Cir. 1993).

Since the judgment in question was entered by the Probate Court in Ohio, this Court will apply that state's version of collateral estoppel.

> In Ohio, the doctrine of res judicata encompasses both issue preclusion, also known as collateral estoppel, and claim preclusion. State ex rel. Nickoli v. Erie MetroPark, 124 Ohio St. 3d 449, 2010-Ohio-606, 923 N.E.2d 588, ¶ 21. "'Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action.'" Nickoli at ¶ 21, quoting Ft. Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd., 81 Ohio St. 3d 392, 395, 692 N.E.2d 140 (1998). Under claim preclusion, a previous

7

> judgment is conclusive as to all claims that were or might have been litigated in the first action. State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd., 121 Ohio St.3d 526, 2009-Ohio-1701, 905 N.E.2d 1210, ¶ 27. The doctrine of issue preclusion provides that "'a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action between the same parties or their privies, whether the cause of action in the two actions be identical or different.'" State ex rel. Davis v. Pub. Emps. Retirement Bd., 120 Ohio St.3d 386, 2008-Ohio-6254, 899 N.E. 2d 975, ¶ 27, quoting Ft. Frye Teachers Assn. at 395, 692 N.E.2d 140. Essentially, issue preclusion prevents the re-litigation of facts and issues that the parties or their privies fully litigated in a previous case. Glidden Co. v. Lumbermens Mut. Cas. Co., 112 Ohio St.3d, 470, 2006-Ohio-6553, 861 N.E.2d 109, ¶ 44.

Rockford Homes, Inc. v. City of Canal Winchester Council, 2014-Ohio-3609, 18 N.E. 3d 788, 796.

Larceny.

With respect to her section 523(a)(4) claim, Plaintiff argues that the Probate Court made a finding of larceny and that Debtors are bound by that finding. This Court has held that, for purposes of section 523(a)(4), federal common law controls the definition of larceny. Wilson Family Foods, Inc. v. Brown (In re Brown), 457 B.R. 919, 926 (Bankr. M.D. Ga. 2011).

> To prove larceny, a plaintiff "must show 'a felonious taking of property with the intent to convert it or to permanently deprive the owner of it.'" 430 B.R. 318, 325 (Bankr. M.D. Ga. 2010) (quoting Bennett v. Wright (In re Wright), 282 B.R. 510, 516 (Bankr. M.D. Ga. 2002).

The Court does not agree that the Probate Court made any finding of larceny. To have made such a finding, the Probate Court would have had to have found that Debtors originally

came into possession of the guns in question by a felonious taking. In all of the orders entered by the Probate Court, the Court made detailed findings of fact to support its conclusions. However, there is no finding of a felonious taking of the guns. In fact, there is no mention or discussion by the Probate Court in any of the voluminous exhibits filed by Plaintiff of how Debtors originally came into possession of Mr. O'Hara's guns.

However, the evidence in this case establishes that no larceny occurred. Debtors have filed affidavits claiming that the guns were brought to Georgia because Mr. O'Hara wanted them to come with him when he moved to Georgia to live with Debtors. Plaintiff has not introduced any evidence to dispute this. Accordingly, the undisputed fact is that Debtors originally came into possession of the guns lawfully. Therefore, by definition, no larceny occurred and Plaintiff's motion for summary judgment under § 523(a)(4) is denied.[2]

Conversion.

However, with respect to Plaintiff's section 523(a)(6) claim, the case is different. Plaintiff argues in her affidavit that the Probate Court found that Debtors "converted" the guns to their own use. Debtors argue that the word "converted" does not appear in any of the Probate Court's orders. In fact, the Probate Court "found [Debtors] continue to withhold, conceal and secret (sic) assets rightfully belonging to the Estate of John C. O'Hara." (Plaintiff's Exhibit 4, p. 3, ¶ 18) and that Debtors had "concealed" the guns. (Plaintiff's Exhibit 4, p. 7, ¶ 20). However,

---

[2] Plaintiff could have asserted a claim of embezzlement under § 523(a)(4). Embezzlement is the fraudulent taking of property by a person into whose hands it has lawfully come. Brown, supra. However, Plaintiff's complaint only asserts a claim of larceny. Doc. No. 1, Complaint, ¶¶ 10 & 17.

even though the Probate Court did not use the word "convert", that is a distinction without a difference, or a matter of semantics.

As explained by the court in Lawson v. Conley (In re Conley), 482 B.R. 191 (Bankr. S.D. Ohio 2012):

> Conversion under Ohio law is the "wrongful exercise of dominion over property in exclusion of the right of the owner, or withholding it from his possession under a claim inconsistent with his rights." Fenix Enterprises, Inc. v. M & M Mortgage Corp., 624 F.Supp.2d 834, 843 (S.D. Ohio 2009). See also Landskroner v. Landskroner, 154 Ohio App.3d 471, 797 N.E. 2d 1002, 1012 (2003) (conversion can only be of identifiable, tangible personal property). The elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages. Fenix, 624 F.Supp. 2d at 843. If the defendant originally acquired possession of the property lawfully, but retains that property in contravention to the plaintiff's rights in the property, then ordinarily a demand and refusal are required to prove conversion. Id.

Id. at 207.[3]

The Ohio concealment statutes provide:

> R.C. 2109.50 allows any person "interested in the estate" to file in the county probate court with jurisdiction over the estate a complaint seeking the return of any "monies, personal property, or choses in action," believed to belong to the estate that the claimant suspects to have been "concealed, embezzled or conveyed away or of being or having been in the possession of" the individual named in the complaint. The respondent is compelled to appear before the probate court "to be examined, on oath, touching the matter of the complaint." R.C. 2109.50. The probate court, either by jury or bench, must make a finding of guilty or not guilty and, if guilty, access damages or order the return of the property and impose

---

[3] Georgia law is essentially the same. Cason v. Cason, 281 Ga. 296, 637 S.E. 2d 716, 720 (2006).

10

> sanctions, including a ten percent penalty. R.C. 2109.52. Thus, these proceedings are quasi-criminal....
>
> Because of the quasi-criminal nature, "[w]rongful or culpable conduct on the part of the person accused is an element of the offense which must be proven by a preponderance of the evidence." Kaforey v. Burge, 9th Dist. Summit No. 17050, 1995 WL 283774, at *2 (May 10, 1995), citing Ukrainiec at 202, 493 N.E. 2d 1368. Thus, the complainant must prove more than "mere possession" of the estate asset. See Longworth v. Childers, 180 Ohio App.3d 162, 2008-Ohio-4927, ¶ 21, 904 N.E.2d 904 (2nd Dist.); Ukrainiec, 24 Ohio App.3d at 202, 493 N.E.2d 1368. "[T]he inquiry under R.C. 2109.50 focuses on the ownership of the asset and whether possession of the asset is being impermissibly concealed or withheld from the estate." Wozniak at 407, 629 N.E.2d 500.

Lance v. Boldman, 2018-Ohio-44, 93 N.E.3d 1013, 1022.

The term "secrete" means:

> To remove or keep from observation, or from the knowledge of others; specif., to conceal or secretly transfer (property, etc.), esp. to hinder or prevent officials or creditors from finding it.

Secrete, Black's Law Dictionary (11th ed. 2019).

Thus, the terms "conversion", "concealment" and "secrete" are essentially synonymous. All require a finding that a person in possession of property belonging to another has wrongfully refused to return the property to the rightful owner. Accordingly, the facts required to establish a conversion are essentially identical to the facts which a party must establish to obtain a judgment from the Probate Court under the concealment statute. Clearly, the Probate Court found that the guns in question rightfully belonged to the Estate. By finding for the Estate, and entering judgment against Debtors, the Probate Court necessarily concluded that Debtors wrongfully and impermissibly withheld the guns from the Estate, resulting in the Estate being damaged by the

loss of their value.  Further, for purposes of Ohio law on conversion, the complaint, the turnover orders and Debtors' refusal to comply therewith satisfy the requirements of a demand for return and refusal thereof.  Since the Probate Court found that Debtors wrongfully withheld the guns from the Estate, issue preclusion prevents Debtors from relitigating that issue here.

Debtors claim in their affidavits that they have returned all of the guns.  However, the Probate Court decided this issue adversely to Debtors.  After hearing evidence on what guns had and had not been returned, the Court entered judgment for the value of the guns it found Debtors had not returned.  Therefore, issue preclusion prevents Debtors from relitigating the issue of whether they returned all of the guns.

Finally, Debtors argue that there has been no proof that their acts were "willful and malicious" as required by § 523(a)(6).  However, the Eleventh Circuit has held:

> ...that proof of "willfulness" requires "'a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another.'" In re Walker, 48 F.3d 1161, 1163 (11th Cir. 1995) (quoting In re Ikner, 883 F.2d 986, 991 (11th Cir. 1989)). "[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." Id. at 1165, see also Kawaauhau v. Geiger, 523 U.S. 57, 61-62, 118 S. Ct. 974, 140 L.Ed.2d 90 (1998) (holding that § 523(a)(6) requires the actor to intend the injury, not just the act that leads to the injury)....
>
> "Malicious" means "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" In re Walker, 48 F.3d at 1164 (quoting In re Ikner, 883 F.2d at 991).  To establish malice, "a showing of specific intent to harm another is not necessary." In re Ikner, 883 F.2d at 991.

Maxfield v. Jennings (In re Jennings), 670 F.3d. 1329, 1334 (11th Cir. 2012).  And the Court has further held that, "Willful and malicious injury includes willful and malicious conversion...".

12

Wolfson v. Equine Capital Corp. (In re Wolfson), 56 F.3d 52, 54 (11th Cir. 1995).

By finding against Debtors, the Probate Court necessarily found that Debtors' failure to deliver the guns was "wrongful...conduct." Lance, supra. Accordingly, Debtors' conduct was "malicious". Any argument to the contrary is barred by issue preclusion.

Debtors are correct that the Probate Court made no finding of intent. Accordingly, the Probate Court judgment does not bar them from raising this issue here. Nevertheless, Plaintiff is entitled to summary judgment.

> As explained by the Eleventh Circuit:
>
> > Under Fed.R.Civ.P. 56(c), a moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The substantive law applicable to the case determines which facts are material. Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "The...court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or her] favor." U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal quotation marks and citations omitted).
> >
> > In Adickes v. Kress, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court instructed the federal courts to employ a two-part framework of shifting burdens to determine whether, as regards a given material fact, there exists a genuine issue precluding summary judgment. The operation of this framework was modified significantly in Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The current framework is set forth below.
> >
> > B. Movants Initial Burden
> >
> > > The movant's initial burden consists of a "responsibility [to] inform [ ] the...court of the basis for its motion and [to]

13

identify [ ] those portions of the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S.Ct. at 2553. The nature of this responsibility varies, however, depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial.

1. For Issue on Which Movant Would Bear Burden of Proof at Trial

> As interpreted by this court sitting en banc, Celotex requires that for issues on which the movant would bear the burden of proof at trial,
>
>> that party must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence...that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party. If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the non-moving party, in response, come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.

Four Parcels, 941 F.2d at 1438 (citations and internal quotation marks omitted; emphasis in original)...

C. Non-Movant's Responsibility Once Movant Satisfies Initial Burden

> If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. Coats & Clark, 929 F.2d at 608. If, however, the movant carries the initial summary judgment burden in one of the ways discussed above, responsibility then devolves upon the non-movant to show the existence of a genuine issue as to the material fact.

1. For Issues on Which Movant Would Bear Burden of Proof at Trial

14

> For issues on which the movant would bear the burden of proof at trial, the non-movant, in order to avoid summary judgment must come forward with evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact.  Only if after introduction of the non-movant's evidence, the combined body of evidence presented by the two parties relevant to the material fact is still such that the movant would be entitled to a directed verdict at trial--that is, such that no reasonable jury could find for the non-movant–should the movant be permitted to prevail without a full trial on the issues. Anderson, 477 U.S. at 249-50, 106 S.Ct. at 2511.

Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993).  In other words, "where the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law." DA Realty Holdings, LLC v. Tenn. Land Consultants, 631 F. App'x. 817, 820 (11th Cir. 2015).

As previously explained, Plaintiff has the burden of proving by a preponderance of the evidence that its claim is non-dischargeable.  Accordingly, she has the burden of proving that Debtors acted with "intent".  "Since it is unlikely that a debtor will admit that he [acted with intent], the debtor's intent may be established by circumstantial evidence or inferred from the debtor's conduct."  Jennings v. Maxfield (In re Jennings), 533 F.3d 1333, 1339 (11th Cir. 2008) (addressing the element of intent under 11 U.S.C. § 727(a)(2)(A)).

The Probate Court judgment establishes:

1. Debtors possessed the guns in question.

2. The guns rightfully belonged to Mr. O'Hara's Estate.

3. Debtors were ordered by the Probate Court on two different occasions to deliver the guns to the Estate.

4. Debtors were found in contempt for failing to comply with the

15

Court's turnover orders.

5. Debtors were imprisoned for two days, fined and then given the opportunity to purge themselves of the contempt and avoid additional jail time by complying with the turnover orders.

6. Debtors failed to purge themselves of contempt and were imprisoned a second time as a result thereof.

7. Debtors returned guns and other items of little value which did not belong to the Estate, many of which had been purchased after Mr. O'Hara's death.

8. Debtors gave conflicting testimony as to what guns of the Estate they held.

The term "intentional" means, "Done with the aim of carrying out the act." Intentional, Black's Law Dictionary (11th ed. 2019). The term "deliberate" means, "Intentional; premeditated; fully considered." Deliberate, Black's Law Dictionary (11th ed. 2019). From the facts above, a finder of fact could find that Debtors acted with intent, i.e. deliberately, in concealing the guns. Accordingly, the burden shifted to Debtors to come "forward with significant, probative evidence demonstrating the existence of a triable issue." Fitzpatrick, supra.

As explained above, Debtors' contention that they have returned all of the guns is barred by issue preclusion. Debtors have offered no other evidence as to why they "concealed" the guns. Counsel for Debtors has suggested that Debtors might have acted as "innocent dupes." (Docket No. 20, Debtors' Reply Brief, p. 9). However, Debtors have introduced no evidence to support that suggestion and statements in a brief are not evidence to raise an issue of fact.

16

Travaglio v. American Exp. Co., 735 F.3d 1266, 1270 (11th Cir. 2013).  Thus, Debtors have produced no evidence to show that there is an issue of fact with respect to their intent.

Debtors rely on the case of Dionne v. Keating (In re XYZ Options, Inc.), 154 F.3d 1262 (11th Cir. 1998) for the proposition that "intent" should not be adjudicated on summary judgment.  However, in that case, the court found that there was conflicting evidence that created an issue of fact.  Id. at 1275.  Here, there is no admissible evidence to counter the circumstantial evidence of intent.

In short, Plaintiff has met her burden of proof with respect to intent.  Debtors have introduced no admissible evidence to the contrary.  Further, all elements of a non-dischargeable claim under 11 U.S.C. § 523(a)(6) have been established.  Accordingly, Plaintiff is entitled to summary judgment on her section 523(a)(6) claim.

CONCLUSION

Plaintiff is the holder of a judgment against Debtors from the Court of Common Pleas Probate Division, Columbiana County, Ohio, in the amount of $125,940, together with interest.  This judgment has been domesticated in the Superior Court of Twiggs County, Georgia.  Because the facts establish that Debtors originally obtained the guns lawfully, Plaintiff cannot show that Debtors committed larceny.  Accordingly, Plaintiff's motion for summary judgment is denied with respect to her claims under 11 U.S.C. § 523(a)(4) as asserted in Counts One and Three of her complaint.  However, as to Plaintiff's claims under 11 U.S.C. § 523(a)(6), there is no genuine dispute as to any material fact.  Accordingly, Plaintiff's motion for summary judgment is granted and her claims against Debtors are nondischargeable under 11 U.S.C. § 523(a)(6) as asserted in

Counts Two and Four of her complaint.

A separate order consistent with this opinion will be entered.

*END OF DOCUMENT*